RODGER R. COLE (CSB No. 178865)
rcole@fenwick.com
SEAN S. WIKNER (CSB No. 268319)
swikner@fenwick.com
FENWICK & WEST LLP
Silicon Valley Center
801 California Street
Mountain View, CA  94041
Telephone:   650.988.8500
Facsimile:    650.938.5200

BRIAN D. BUCKLEY
(admitted *pro hac vice*)
bbuckley@fenwick.com
FENWICK & WEST LLP
1191 Second Avenue, 10th Floor
Seattle, WA 98101
Telephone:   206.389.4510
Facsimile:   206.389.4511

Attorneys for Defendant
SHOPKICK, INC.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ZAK HURICKS, an individual, and TRISTA ROBINSON, an individual, by themselves and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SHOPKICK, INC., a Delaware corporation,<br><br>Defendant. | Case No.: 4:14-CV-02464-MMC<br><br>**DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:          October 3, 2014<br>Time:         9:00 a.m.<br>Dept:          Courtroom 7, 19th Floor<br>Judge:        The Hon. Maxine M. Chesney<br><br>Date Action Filed:  May 28, 2014 |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................................................... II

NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED
COMPLAINT ............................................................................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................. 1

I.       ISSUE TO BE DECIDED ............................................................................................. 1

II.      INTRODUCTION ......................................................................................................... 1

III.     BACKGROUND ........................................................................................................... 3

IV.      ARGUMENT AND AUTHORITY .............................................................................. 7

         A.       Plaintiffs Still Fail To Adequately Plead The Use Of An ATDS. .......................... 8

         B.       Shopkick Did Not "Make Any Call." ................................................................... 12

         C.       Further Amendment Would Be Futile .................................................................. 15

V.       CONCLUSION ........................................................................................................... 19

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page(s)</u>

3

## <u>CASES</u>

4

*Aderhold v. Car2Go N.A., LLC*,
No. C13–489RAJ, 2014 WL 794802 (W.D. Wash., Feb. 27, 2014) ......................................16

5

*Airs Aromatics, LLC v. Opinion Victoria's Secret Stores Brand Management, Inc.*,
744 F.3d 595 (9th Cir. 2014)..................................................................................................15

6

7

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..............................................................................................................7, 8

8

9

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..............................................................................................................7, 8

10

*Ceja v. Shopkick, Inc.*,
Case No. CV13-6295 (C.D. Cal. 2013) ................................................................................18

11

12

*Chesbro v. Best Buy Stores, L.P.*,
705 F.3d 913 (9th Cir. 2012)............................................................................................13, 18

13

*Colony Cove Props., LLC v. City of Carson*,
640 F.3d 948 (9th Cir. 2011).....................................................................................................8

14

15

*Daniels v. ComUnity Lending, Inc.*,
No. 13cv488-WQH-JMA, 2014 WL 51275 (S.D. Cal. Jan. 6, 2014) ....................................9

16

*De Los Santos v. Millward Brown, Inc.*,
No. 13–80670–CV, 2014 WL 2938605 (S.D. Fla., Jun. 30, 2014)........................................14

17

18

*DeSoto v. Yellow Freight Systems, Inc.*,
957 F.2d 655 (9th Cir. 1992)..................................................................................................15

19

*Dominguez v. Yahoo!, Inc.*,
No. 13-1887, 2014 WL 1096051 (E.D. Pa., Mar. 20, 2014)..............................................9, 14

20

21

*Forman v. Data Transfer, Inc.*,
164 F.R.D. 400 (E.D. Pa. 1995).............................................................................................17

22

*Freidman v. Massage Envy Franchising, LLC*,
No. 3:12-cv-02962-L-RBB, 2013 WL 3026641 (S.D. Cal. June 13, 2013) ............................9

23

24

*Gragg v. Orange Cab Co, Inc.*,
No. C12-0576RSL, 2014 WL 494862 (W.D. Wa., Feb. 7, 2014) ......................................9, 14

25

*Hunt v. 21st Mortgage Corp.*,
No. 2:12–CV–2697, 2014 WL 4260275 (N.D. Ala., Feb. 4, 2014)........................................14

26

27

*Ibey v. Taco Bell Corp.*,
No. 12-cv-583-H-WVG, 2012 WL 2401972 (S.D. Cal. June 18, 2012) ..................................9

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

*In re Jiffy Lube Int'l, Inc. Text Spam Litig.*,
847 F. Supp. 2d 1253 (S.D. Cal. 2012) ...................................................................13

*Kayes v. Pacific Lumber Co.*,
51 F.3d 1449 (9th Cir. 1995) ..................................................................................17

*Kazemi v. Payless Shoesource, Inc.*,
No. C 09–5142 MHP, 2010 WL 963225 (N.D. Cal., Mar. 16, 2010)................................11, 12

*Knutson v. Reply!, Inc.*,
No. 10-CF-1267 BEN, 2011 WL 291076 (S.D. Cal. Jan. 27, 2011) ........................................9

*Kramer v. Autobytel, Inc.*,
759 F. Supp. 2d 1165 (N.D. Cal. 2010) ...............................................................11, 12

*Meyer v. Portfolio Recovery Associates, LLC*,
No. 11cv1008 AJB (RBB), 2011 WL 11712610 (S.D. Cal., Sept. 14, 2011)...........................17

*Mims v. Arrow Financial Services, LLC*,
--- U.S. ----, 132 S.Ct. 740 (2012).......................................................................18

*Ryabyshchuck v. Citibank (South Dakota) N.A.*,
No. 11–CV–1236–IEG (WVG), 2012 WL 5379143 (S.D. Cal., Oct. 30., 2012) .........13, 16, 18

*Satterfield v. Simon & Schuster, Inc.*,
569 F.3d 946 (9th Cir. 2009)................................................................................8, 9

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001)..................................................................................8

*Trindade v. Reach Media Group, LLC*,
No. 12–CV–4759–PSG, 2013 WL 3977034 (N.D.Cal., July 31, 2013) ...............................15

## STATUTES

47 U.S.C. § 227(a)(1) ...............................................................................................8, 10

47 U.S.C. § 227(b)(1)(A)
(Federal Telephone Consumer Protection Act ("TCPA")................................................. *passim*

47 U.S.C. § 227(b)(1)(A)(iii) .......................................................................................8

Cal. Bus. & Prof. Code § 17207 ....................................................................................1

## RULES

Fed. R. Civ. P. 8(a).....................................................................................................7

Fed. R. Civ. P. 23(a)(4).............................................................................................17

Federal Rule of Civil Procedure 12(b)(6) ............................................................... *passim*

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

## OTHER AUTHORITIES

https://www.shopkick.com/about ........................................................................................4

https://www.shopkick.com/terms-of-service ..............................................................4, 5

https://www.shopkick.com/tour ........................................................................................4

United States Mem. In Supp. Of The Constitutionality Of The TCPA,
    No. 13–80670–CV (S.D. Fla. Jan. 31, 2014) (ECF No. 54) .....................................14

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

### NOTICE OF MOTION AND MOTION
### TO DISMISS FIRST AMENDED COMPLAINT

**TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, on October 3, 2014, at 9:00 a.m., in the courtroom of the Honorable Maxine M. Chesney, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Courtroom 7, 19th Floor, Defendant shopkick, Inc. ("shopkick") will move for an order dismissing Plaintiffs' First Amended Class Action Complaint For Damages And Injunctive Relief [Dkt. No. 37], filed August 8, 2014 (the "Amended Complaint" or "AC"), pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to plead a viable claim for relief.  This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the documents already on file with the Court in this action, the arguments of counsel, and any other matter that the Court may properly consider.

### MEMORANDUM OF POINTS AND AUTHORITIES

### I.  ISSUE TO BE DECIDED

Whether Plaintiffs have again failed to sufficiently allege that shopkick made any call using an "automatic telephone dialing system" ("ATDS"), a required element of Plaintiffs' claims under the federal Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(1)(A) ("TCPA").

### II.  INTRODUCTION

Shopkick offers a popular free shopping application (or "app") for mobile devices.  Over six million people use the shopkick app to enhance their shopping experiences and earn rewards. Plaintiffs Zak Huricks and Trista Robinson claim to have received unsolicited text messages from shopkick inviting Plaintiffs to download and try the shopkick app.  Their Amended Complaint asserts that those text messages violate the federal TCPA, as well as California's consumer protection statute (Cal. Bus. & Prof. Code § 17207).  Plaintiffs and their counsel, the Newman Du Wors LLP law firm, seek to represent a nationwide class of people who received an allegedly unsolicited text message inviting them to try the shopkick app.  On July 24, 2014, the Court dismissed Plaintiffs' initial complaint for failure to adequately plead the elements of a TCPA claim, specifically shopkick's use of an ATDS.  *See* Dkt. No. 35.

1    Remarkably absent from the Amended Complaint is any discussion of the actual facts that

2  led to this lawsuit.  We know — through declarations submitted by Plaintiffs, their lead lawyer,

3  and his paralegal, Arlyne Sorrells — essentially what took place.  Ms. Sorrells intentionally

4  downloaded the shopkick app.  She, like millions of other consumers, was excited by the potential

5  rewards available through the app, in particular a Vespa motor scooter.  In order to maximize her

6  rewards and her chances of winning the scooter, Ms. Sorrells intentionally chose to message all of

7  her Facebooks contacts (nearly 300 people).  After doing so, she became "embarrassed" and sent

8  an apology to her contacts for the "blast" that she had "caused."  At that point, Ms. Sorrells's

9  boss, attorney John Du Wors, purportedly saw her apology and asked what had occurred.  Mr. Du

10  Wors informed Ms. Sorrells that, because some of her messages had serendipitously been sent

11  using texts, the TCPA might be implicated.  Mr. Du Wors then encouraged Ms. Sorrells to recruit

12  her friends to serve as plaintiffs in a lawsuit against shopkick.  In response to Ms. Sorrells's

13  invitation, Plaintiffs (who are Ms. Sorrells's close friends) agreed to act as class representatives.

14  Less than a month after Ms. Sorrells deliberately "blasted" her contacts, this suit was filed.

15    It is bad enough that Plaintiffs and their counsel, Mr. Du Wors, failed to disclose any of

16  these facts to the Court in their initial complaint.  Instead, shopkick was forced to conduct its own

17  investigation and begin to expose the truth.  What is worse, in the Amended Complaint, Plaintiffs

18  now compound their deception with affirmatively false statements.  Plaintiffs claim that shopkick

19  sent them text messages.  Not true: those messages admittedly were sent by Ms. Sorrells, whose

20  name does not even appear in the Amended Complaint.  Plaintiffs claim that shopkick used an

21  ATDS.  Not true: the messages Plaintiffs received were admittedly sent from Ms. Sorrells's cell-

22  phone.  Plaintiffs then create an utterly fictional description of shopkick's internal systems, based

23  on no facts whatsoever but worded to sound technologically sophisticated, which Plaintiffs claim

24  constitute an ATDS.  That fiction is unavailing—as explained below, the Amended Complaint

25  still fails to adequately plead shopkick's use of an ATDS.

26    Moreover, even assuming (for Rule 12(b)(6) purposes) that Plaintiffs' imaginary ATDS

27  existed at shopkick, it is immaterial.  Shopkick can only be liable under the TCPA if it *sent* a text

28  message *using* an ATDS.  It is beyond real dispute that shopkick did no such thing.  Ms. Sorrells

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

sent the text messages that Plaintiffs received, and the only device in the equation that could conceivably constitute an ATDS is Ms. Sorrells's cellphone. But many courts have held, and the United States itself has very recently agreed, that a cellphone is *not* inherently an ATDS, at least not unless the phone has actually been programmed with the capacity to generate random or sequential numbers. Plaintiffs do not allege that Ms. Sorrells's cellphone had such capacity; indeed, Plaintiffs say nothing at all about Ms. Sorrells's cellphone. The Amended Complaint therefore lacks the critical link for TCPA liability, *i.e.*, that the messages at issue were sent using an ATDS, let alone using an ATDS owned or controlled by shopkick. As such, Plaintiffs claims still fail as a matter of law.

Plaintiffs should not be given a third bite at the apple, because any further amendments of their claims would be futile. That is so because this simply is not the sort of case for which the TCPA was designed. The only person even conceivably harmed here (by her own inattention and subsequent chagrin) was Ms. Sorrells. But as the Court noted in dismissing Plaintiffs' initial complaint, Ms. Sorrells obviously has no interest in being a party to this suit. Plaintiffs themselves were not harmed, and they do not claim otherwise; they were recruited to act as class representatives, and did so to help their close friend and her law firm. The only person who stands to materially gain is Mr. Du Wors, who (taking even the most charitable and non-conspiratorial view of the facts) instigated this lawsuit. Not a single court in the country, nor the FCC, has ever found that user-initiated/user-sent text messages like those at issue here violate the TCPA, and for good reason — the implications of such a ruling for modern social-networking, and mobile technology and the thriving mobile industry, would be catastrophic and would bear no relation to the harms that the TCPA was designed to address.

For the reasons discussed below, Shopkick respectfully requests that Plaintiffs' Amended Complaint be dismissed with prejudice.

### III.  BACKGROUND

This case is unusual in many respects. Not the least of which is the fact that, as background for this Rule 12(b)(6) motion, the Court already has substantial knowledge of the facts outside the Amended Complaint. And that knowledge does not require judicial notice or reliance

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

on the incorporation-by-reference doctrine.  In conjunction with its motion to dismiss Plaintiffs'

initial complaint, shopkick also filed a motion to disqualify Plaintiffs' legal counsel, the Newman

Du Wors firm.  *See* Dkt. No. 11.  In opposition to that motion, Plaintiffs submitted declarations

from their lead counsel John Du Wors [Dkt. No. 26] ("Du Wors Dec."), Arlyne Sorrells [Dkt.

No. 25] ("Sorrells Dec."), Plaintiff Zak Huricks [Dkt. No. 27] ("Huricks Dec."), and Plaintiff

Trista Robinson [Dkt. No. 28] ("Robinson Dec.").  Though one would not know it from reading

the Amended Complaint, those declarations revealed much, though hardly all, about the

circumstances leading up to this lawsuit.

As addressed further in the analysis section below, the Court is not obliged to accept as

true allegations that are plainly contradicted by other facts.  That is particularly true where the

reality has been established by Plaintiffs themselves through sworn testimony.  With that in mind,

here is what we know:

Since its founding four years ago, shopkick has become one of the most popular mobile

shopping applications.  With over 6 million users, shopkick is the most-used shopping app and

fourth in overall consumer reach, according to Nielsen.  *See* https://www.shopkick.com/about.

As described at the shopkick website, here is how it works:

> Shopkick is the shopping app that helps you discover all the best products at
> stores near you.  It shows you popular products and rewards waiting for you at
> stores like Target, Macy's, Best Buy, Old Navy, American Eagle, JCPenney,
> Sports Authority and Crate & Barrel.  And it rewards you with kicks (points) just
> for walking in the door.  Get even more kicks when you scan items and make
> purchases.  Redeem your points for gift cards at your favorite stores.  Now you
> can do even more of what you love—shop.

*See* https://www.shopkick.com/tour.  The shopkick app is free to download and free to use.

By downloading the shopkick app, a user agrees to shopkick's Terms of Service.  *See*

*generally*, https://www.shopkick.com/terms-of-service.  Pursuant to the Terms of Service, the

user consents to receive various messages and notifications from shopkick, including text

messages (though the user may opt out).  *Id*.  The user also agrees as follows:

> We may offer you the opportunity to invite your friends or contacts to download
> the shopkick Application and enjoy the Services.  If you click to invite one or
> more of your friends or contacts using text messaging (SMS), we may suggest
> content for the message.  You can edit that suggested content, and if you choose
> to send text message invitations those messages will be sent from the SMS

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    functionality on your phone. *If you do choose to send such invitations, you*
2    *represent to shopkick that the recipients of such invitations have consented to*
     *receive such messages from you, and that those recipients do not consider such*
3    *messages unwanted or unsolicited*.

4    *Id.* (emphasis added). And the user commits not to "send to any third party any unsolicited

5    communication or message, including without limitation text messages or email, in connection

6    with or related in any way to the Services or to shopkick." *Id.* The user also commits not to use

7    the app or shopkick's services in any manner that violates the law. *Id.*

8        On May 1, 2014, Arlyne Sorrells downloaded the shopkick app. Sorrells Dec. ¶ 2. She,

9    like millions of others, was excited to experience shopkick and earn the valuable rewards it offers.

10   In particular, she was interested in a Vespa scooter, one of the most valuable rewards shopkick

11   users can earn. *Id.* The points that shopkick users earn, which can then be redeemed for rewards,

12   are called "kicks." A user can earn those kicks in various ways, including by simply shopping at

13   her favorite stores. *See* Du Wors Dec., Ex. A. Not surprisingly, a user must redeem a large

14   number of kicks in order to receive a free Vespa. *See id.*, Ex. C.

15       Like thousands of modern online and mobile retailers, shopkick invites its users to refer or

16   invite their friends to try the shopkick app — the user is then rewarded with kicks if one of her

17   invitees downloads the app. Ms. Sorrells understood this. Sorrells Dec. ¶ 3-5. She wanted the

18   motor scooter and she was motivated to earn kicks: "I accepted Shopkick's proposal to invite

19   friends because I wanted to earn Kicks to redeem for rewards." *Id.*, ¶ 5.

20       Ms. Sorrells claims that she only intended to send invitations to her Facebook friends.

21   Sorrells Dec. ¶ 3. Notably, that was at least 290 people.[1] Ms. Sorrells admits that, rather than

22   individually selecting friends she wished to invite, she deliberately chose the select "All" button

23   in the shopkick app. *Id.*, ¶ 9. Again, she chose that approach specifically because her goal was to

24   maximize her personal rewards and earn as many kicks as she could. But Ms. Sorrells claims that

25   the app user-interface was "misleading," and that she "had no way of knowing" that by choosing

26

27   _____

28   [1]  *See* Supplemental Declaration of Steven Stanek filed in support of shopkick's motion to
     disqualify counsel [Dkt. No. 31-1] ("Supp. Stanek Dec."), ¶ 4.

"Select All" she was sending invitations to her full contact list (as opposed to only her 300 Facebook contacts).  *Id.*, ¶ 8.[2]

After sending her invitations to earn shopkick rewards, Ms. Sorrells began receiving messages from her "friends and acquaintances," including some of the nearly 300 people she contacted through Facebook (not by text).  *See* Sorrells Dec., ¶ 14.  She does not say, but the implication is that some of those friends and acquaintances were unhappy about having received her invitation.  As a result, Ms. Sorrells became "embarrassed" and "posted a message on Facebook apologizing to my Facebook community for causing a blast of emails, Facebook messages, and text messages."  *Id.*, ¶ 18.  Mr. Du Wors apparently saw Ms. Sorrells's post, which he claims said: "Dear friends you probably just got a message from me about shopkick. …Sorry for the blast."  Du Wors Dec., ¶ 6.

After Mr. Du Wors, who is Ms. Sorrells's co-worker and (presumably) boss, saw her Facebook post, he apparently reached out to her.  He states that "[a]fter Ms. Sorrells explained what happened, I concluded that Shopkick's practices violate the TCPA."  Du Wors Dec., ¶ 6.  Mr. Du Wors then encouraged Ms. Sorrells to see "if any of her friends who had received the offending text message had kept it and wished to act as class representatives."  *Id.*  Ms. Sorrells confirms that it was Mr. Du Wors who encouraged her to go in search of plaintiffs willing to sue shopkick.  Sorrells Dec., ¶ 18.  She "posted a message on Facebook to this effect."  *Id.*  In response to Ms. Sorrells's Facebook solicitation, Plaintiffs Zak Huricks and Trista Robinson "volunteered to act as class Plaintiffs."  *Id.*

In their declarations, Plaintiffs both acknowledge that they received text messages not from shopkick, but from Ms. Sorrells.  Huricks Dec., ¶ 2 ("I received a text message (the 'Text Message') from Arlyne Sorrells); Robinson Dec., ¶ 2 ("I received a text message (the 'Text Message') from Arlyne (Carrico) Sorrells).  Plaintiffs also state that they saw Ms. Sorrells's

---

[2]  It is beyond the scope of (and not directly relevant to) this dismissal motion, but Ms. Sorrells's description of her interaction with the shopkick app cannot possibly be accurate.  In its reply in support of its motion to disqualify counsel, shopkick explained in detail how the shopkick app works, and specifically how it is designed to reduce the risks of users inadvertently "blasting" their contacts.  *See* Dkt. No. 31 at 3-4.  In any event, Ms. Sorrells admits that she *intended* to send a broadcast message to all of contacts, rather than individually selecting recipients.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

second Facebook post and agreed to act as class representatives in a suit against shopkick. *Id.*, ¶¶ 4. Plaintiffs both attached screenshots from their iPhones purporting to be pictures of the text messages they received from Ms. Sorrells. *Id.*, Ex. A. Those screenshots include some interesting details.

The text message Ms. Robinson received clearly shows at the top that it is not from shopkick, but from Arlyne Carrico. Robinson Dec., Ex. A; *see also* Amended Complaint, Ex. B (same screenshot). According to her Facebook page and Ms. Robinson's declaration, Carrico is Ms. Sorrells's maiden name. *Id.*, ¶ 2. Because Ms. Sorrells did not register her shopkick account, shopkick did not even know her current name, let alone her maiden name, further confirming that the text came from Ms. Sorrells's phone and not from shopkick's servers.

Mr. Huricks's declaration is unusual in other ways. He did not attach a screenshot of the original text message from Ms. Sorrells, as he claims in his declaration. Huricks Dec., ¶ 2. Instead, he attached a screenshot of his *own* text messages purporting to *forward* the original text message to Ms. Sorrells's email account at the Newman Du Wors law firm. Huricks Dec., Ex. A. Mr. Huricks had obviously saved the original message if he was able to forward it. Assuming he has preserved evidence and not since deleted the original message, it no doubt reflects that it was sent not by shopkick but by Ms. Sorrells. Interestingly, a different screenshot from Mr. Huricks's cellphone is attached to the Amended Complaint. Plaintiffs claim that Exhibit A to the Amended Complaint is a "copy" of the offending text message Mr. Huricks received. AC ¶ 36. Again, it is not a screenshot of the message itself, but a screenshot of Mr. Huricks's *own* texts purporting to *forward* the message he received. Notably, Mr. Huricks's messages states: "Here's the **email** they sent." *See* AC ¶ Ex. A (emphasis added).

## IV.  ARGUMENT AND AUTHORITY

To survive a Rule 12(b)(6) motion, a complaint must allege sufficient well-pleaded facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While a complaint need not include detailed factual allegations, Rule 8(a) "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."

1   *Twombly*, 550 U.S. at 555.  The complaint must allege facts that, when considered true, raise the

2   right to relief "above the speculative level." *Id.*  Where a plaintiff's complaint pleads facts that

3   are merely *consistent with* a defendant's liability, it "stops short of the line between possibility

4   and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*).

5       In ruling on a motion to dismiss, the Court must assume the truth of all well-pleaded

6   factual allegations, but the Court need <u>not</u> accept as true any conclusory allegations, unwarranted

7   deductions of fact, or unreasonable inferences.  *See Sprewell v. Golden State Warriors*, 266 F.3d

8   979, 988 (9th Cir. 2001); *Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all

9   of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare

10  recitals of the elements of a cause of action, supported by mere conclusory statements, do not

11  suffice.").  Nor is the Court compelled to accept as true allegations that are contradicted by the

12  documents and materials referred to in the complaint or subject to judicial notice.  *Colony Cove*

13  *Props., LLC v. City of Carson*, 640 F.3d 948, 955 (9th Cir. 2011).  And it should go without

14  saying that the Court need not accept allegations that are demonstrably or obviously false.

15      **A.  <u>Plaintiffs Still Fail To Adequately Plead The Use Of An ATDS.</u>**

16      As relevant to this Motion, the TCPA provides that a person may not "make any call" to a

17  cellular phone using an "automatic telephone dialing system," or an artificial prerecorded voice

18  message, without the recipient's prior express consent.  *See* 47 U.S.C. § 227(b)(1)(A)(iii).  The

19  TCPA defines the phrase "automatic telephone dialing system" as "equipment which has the

20  capacity— (A) to store or produce telephone numbers to be called, using a random or sequential

21  number generator; and (B) to dial such numbers."  47 U.S.C. § 227(a)(1).  Thus, a TCPA plaintiff

22  must plausibly plead both ends of the statutory link, *i.e.*, that a defendant (or its agent) <u>made a call</u>

23  (or sent a text message) <u>using an ATDS</u>.

24      In the Ninth Circuit, a TCPA plaintiff must allege, and then ultimately prove, that the

25  offending call or text message was sent using equipment that has the capacity to store or produce

26  telephone numbers to be called using a random or sequential number generator.  *See Satterfield v.*

27  *Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009) ("[The TCPA's] clear language

28  mandates that the focus must be on whether the equipment has the *capacity* "to store or produce

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

telephone numbers to be called, using a random or sequential number generator.").  Importantly, the Ninth Circuit, and the majority of courts both within and outside this Circuit, have further determined that the "capacity" must actually exist on the device when the offending messages are sent, and not be merely potential or theoretical.  *Id.*; *see also Gragg v. Orange Cab Co, Inc.*, No. C12-0576RSL, 2014 WL 494862, *2 (W.D. Wa., Feb. 7, 2014) ("Adopting plaintiff's broad interpretation that any technology with the **potential** capacity to store or produce and call telephone numbers using a random number generator constitutes an ATDS would capture many of contemporary society's most common technological devices within the statutory definition. The Court will therefore determine the TaxiMagic program's status under the TCPA based on the system's **present**, not **potential**, capacity to store, produce, or call randomly or sequentially generated telephone numbers.")(citations omitted; emphasis in original); *Dominguez v. Yahoo!, Inc.*, No. 13-1887, 2014 WL 1096051, *6 n.4 (E.D. Pa., Mar. 20, 2014)(" Recently, courts and commentators have observed that many modern technological devices, including smartphones, could store or produce numbers and dial such numbers without human intervention if outfitted with the requisite software.  Thus, they have drawn a distinction between a system's present capacity (as currently designed) and its potential capacity").

Courts in the Ninth Circuit have repeatedly rejected mere conclusory allegations that the defendant used an ATDS, or allegations that simply restate or paraphrase the statutory definition of an ATDS, as insufficient to state a TCPA claim.  *See, e.g.*, *Freidman v. Massage Envy Franchising, LLC*, No. 3:12-cv-02962-L-RBB, 2013 WL 3026641, *2 (S.D. Cal. June 13, 2013) (dismissing TCPA claim where two plaintiffs alleged only that they received similar impersonal text messages from the defendant; "The text messages are generic and impersonal, as Plaintiffs assert, but that is not enough to make the claims plausible."); *Ibey v. Taco Bell Corp.*, No. 12-cv-583-H-WVG, 2012 WL 2401972, *3 (S.D. Cal. June 18, 2012) (conclusory allegation that message was sent using an ATDS insufficient where message "did not appear to be random"); *Daniels v. ComUnity Lending, Inc.*, No. 13cv488-WQH-JMA, 2014 WL 51275, *5 (S.D. Cal. Jan. 6, 2014) (same); *Knutson v. Reply!, Inc.*, No. 10-CF-1267 BEN (WMc), 2011 WL 291076, *2 (S.D. Cal. Jan. 27, 2011) (dismissing TCPA claim where complaint alleged that defendant

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  used ATDS but no facts permitting an inference that the message was sent using equipment with

2  capacity to store or produce numbers using a random or sequential number generator).

3       In light of those cases and others, the Court dismissed Plaintiffs' original complaint for

4  failure to adequately plead shopkick's use of an ATDS.  Dkt. No. 35 at 4.  As the Court noted,

5  "Plaintiffs' allegations regarding Shopkick's asserted use of an ATDS consist solely of para-

6  phrases of the definition of ATDS as set forth in the TCPA."  *Id*.  Plaintiffs' attempts to cure

7  those deficiencies in the Amended Complaint fall short.

8       The new "details" regarding shopkick's alleged ATDS are found in Paragraph 30 of the

9  Amended Complaint.  The words sound technologically sophisticated, with talk of "distributed

10 hardware and software components" a "wide area network," and the ubiquitous "cloud."  The

11 allegations in Paragraph 30 are entirely made up.  Plaintiff and their counsel know that, of course,

12 and do not even purport to identify the factual bases or sources on which Paragraph 30 is based.[3]

13 But even accepting Plaintiffs' inventions as true, as Rule 12(b)(6) requires, those allegations do

14 not adequately plead the use of an ATDS.

15      The TCPA says nothing about wide area networks or the cloud.  The TCPA definition of

16 an ATDS comprises two elements: (1) the capacity to store or produce telephone numbers to be

17 called, using a random or sequential number generator; (2) the capacity to dial such numbers.  *See*

18 Dkt. No. 35 at 4 (quoting 47 U.S.C. § 227(a)(1)).  Nothing in Paragraph 30 of the Amended

19 Complaint speaks to those elements.  Even if shopkick's internal systems in fact operated as

20 Plaintiffs contrive in Paragraph 30, their statutory allegations are found elsewhere in the pleading.

21 In Paragraph 32, Plaintiffs allege that shopkick's ATDS (as described in Paragraph 30) "also has

22 the capacity to store and generate phone numbers on both a random basis (by which it randomly

23 generates cell phone numbers to send Shopkick SMS Spam messages), and also on a sequential

24 basis (by which it generates cell phone numbers to send SMS Spam using a program that

25 constructs new cell phone numbers in sequence from previously generated cell phone numbers)."

---

[3]  This is a curious and very risky tactic.  If this case proceeds past the dismissal stage (which it plainly should not), discovery will reveal that Plaintiffs' allegations are pure fantasy.  If it comes to that, Plaintiffs and their counsel can certainly expect a sanctions motion for making statements to the Court without any conceivable good-faith basis.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

AC ¶ 32.  That allegation is just as conclusory as the allegation in Plaintiffs' original complaint. It is still merely a paraphrase of the statute, with the insertion of two make-weight parentheticals. But those parentheticals only elaborate (unnecessarily, as the concepts are rather obvious) on the meaning of "random" and "sequential" number generation.  Plaintiffs offer no additional facts to support an inference, reasonable or otherwise, that shopkick's systems (however they are actually configured) have that present capacity.

Similarly, in Paragraph 33, Plaintiffs allege that shopkick's ATDS (as described in Paragraph 30) "has the capacity to dial and call the numbers it stores and generates through its predictive dialing, and random and sequential number generating functionalities."  AC ¶ 33. Plaintiffs add "of course" before that allegation, as if shopkick's use of an ATDS were a truism. This is precisely the pleading approach that the Court rejected in Plaintiff's original complaint. *See* Dkt. No. 35 at 4.  It is nothing more than a paraphrase of the statutory requirement.[4]

In those cases where courts have found that an ATDS was adequately pled, it was not because the plaintiffs fabricated a description of the defendant's internal computer systems.  As this Court noted, in those cases the plaintiffs rely on characteristics of the offending *text messages* themselves, because those characteristics tend to suggest that the messages were sent by the defendant company randomly and *en masse*.  *See* Dkt. No. 35 at 4 (citing *Kazemi v. Payless Shoesource, Inc.*, No. C 09–5142 MHP, 2010 WL 963225 (N.D. Cal., Mar. 16, 2010), and *Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165, 1171 (N.D. Cal. 2010)).  Perhaps the single most compelling fact in those cases is when the text messages are sent from an SMS short code. *See, e.g., Kramer*, 759 F. Supp. 2d at 1171; *Kazemi*, 2010 WL 963225 at *2.  Those short codes connect the text message directly to the defendant company and, when there is no pre-existing

---

[4]  Plaintiffs have added an allegation that shopkick's purported ATDS "operates as a 'predictive dialer' as that term has been defined by the Federal Communications Commission."  AC ¶ 33. The FCC's phrase "predictive dialer" does not appear in the statute, but it does not (and cannot) obviate the requirement in the TCPA that an ATDS have the present capacity to store or produce phone numbers to be called using a random or sequential number generator.  Because Plaintiffs have failed to adequately plead that requirement, their "predictive dialer" allegation adds nothing to the discussion.  More to the point, Plaintiffs' assertion that shopkick's ATDS "operates as a 'predictive dialer'" is just as conclusory as Plaintiffs' other allegations.  It still offers no facts to support an inference that shopkick in fact used an ATDS to send the messages at issue.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

relationship between the plaintiff and defendant and the message is clearly impersonal, support an inference that the messages were randomly sent in bulk.

Here, as the Court rightly observed, Plaintiffs allege no such facts. *See* Dkt. No. 35 at 4.[5] And with good reason. There is no dispute that the text messages Plaintiffs received came from Arlyne Sorrells.[6] Indeed, Plaintiffs begrudgingly admit as much. *See* AC ¶ 24 ("The SMS Spam sent by Defendants' ATDS is transmitted through the user's cell phone to the cell phones of the SMS Spam recipients"). She sent those messages deliberately (though supposedly intended only to "blast" her Facebook friends and not her text contacts). Unlike *Kramer*, *Kazemi*, and similar cases, there is no SMS short code at issue here, nor any impersonal message sent randomly or indiscriminately by shopkick. Stated differently, Plaintiffs cannot rely on the text messages at issue here to "infer" a conclusion that is admittedly inconsistent with reality. And, as discussed below, in light of that reality — *i.e.*, that shopkick did not send these messages — Plaintiff's TCPA claims fail for another fundamental reason.

### B. Shopkick Did Not "Make Any Call."

As noted above, to establish primary TCPA liability, Plaintiffs must adequately plead a nexus between two statutory elements: that shopkick <u>used an ATDS</u> to <u>make a call</u> to Plaintiffs. As discussed, Plaintiffs have failed to properly allege that shopkick uses an ATDS. But even if Plaintiffs had carried that burden, they cannot allege that shopkick's ATDS was used to send the text messages Plaintiffs allegedly received.

---

[5]  In their original complaint, Plaintiffs claimed that the text messages they received came "from an unknown number." Complaint [Dkt. No. 1], ¶ 18. And in their opposition to shopkick's initial motion to dismiss, Plaintiffs went so far as to state that the messages were sent from an SMS short code. *See* Dkt. No. 23 at 3. Knowing what we now know, and having seen the actual message Plaintiff Robinson received, the above statements were patently false. Plaintiffs have wisely omitted those false statements from the Amended Complaint.

[6]  From the face of the Amended Complaint, it is not even clear that Plaintiff Huricks received a text message. The Amended Complaint claims that "[c]opies of the Shopkick SMS Spam messages sent to Plaintiffs are attached as Exhibits A and B." AC ¶ 36. But as noted above, Exhibit A, which is apparently a screenshot from Mr. Huricks's phone, does not show the original message from Ms. Sorrells. Moreover, Mr. Huricks's own words state: "Here's the email they sent." The TCPA has no bearing on email, which is regulated under separate federal statutes. Thus, taking Mr. Huricks at his word, it would appear he has no TCPA claim at all.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

In the Amended Complaint, Plaintiffs claim that "[o]n or about May 1, 2014, Shopkick and/or its authorized agents, vendors, and/or contractors, used an ATDS to send the Shopkick SMS Spam messages to the cellular telephones owned by Plaintiffs." *See* AC ¶ 35. That allegation can only charitably be described as inaccurate. In their prior declarations, both Plaintiffs admitted that the text messages came from Arlyne Sorrells. *See* Huricks Dec., ¶ 2; Robinson Dec., ¶ 2. Ms. Sorrells herself admits that she sent the messages. Sorrells Dec., ¶ 18 ("Embarrassed, I posted a message on Facebook apologizing to my Facebook community *for causing a blast of emails, Facebook messages, and text messages*.")(emphasis added). And it is obvious from Exhibit B to the Amended Complaint — the message received by Plaintiff Trista Robinson — that Ms. Sorrells (nee Carrico) sent the message. Because Ms. Sorrells did not register her shopkick account, shopkick had no user information about her and had to conduct its own investigation just to discovery her identity. Shopkick certainly would not have known Ms. Sorrells's maiden name. Anyone with a mobile phone understands that Arlyne Carrico's name appeared on Ms. Robinson's phone because that name was associated in her contact list with the number from which the message was received.

The Ninth Circuit has encouraged courts to address TCPA cases with "a measure of common sense." *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012); *accord Ryabyshchuck v. Citibank (South Dakota) N.A.*, No. 11–CV–1236–IEG (WVG), 2012 WL 5379143, *3 (S.D. Cal., Oct. 30., 2012) ("[T]he Court must recognize the common sense practicalities of the situation presented.")(internal quotation/citation omitted). Ignoring Plaintiffs' sleight-of-hand in the Amended Complaint, it is obvious that the text messages in this case came from Arlyne Sorrells's cellphone. She downloaded the shopkick app, deliberately sent a group message to her friends and contacts, but (giving her the benefit of the doubt) mistakenly sent those messages by text in addition to Facebook. But the only device in the equation here, and the only device that could conceivably constitute an ATDS, is Ms. Sorrells's cellphone.

Modern courts have widely recognized that cellphones and other mobile devices are not inherently ATDSs. *See, e.g.*, *In re Jiffy Lube Int'l, Inc. Text Spam Litig.*, 847 F. Supp. 2d 1253, (S.D. Cal. 2012) (defendant "provides essentially no support for its assertion that use of an iPhone

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

or BlackBerry could fall under the statute's purview"); *Gragg*, 2014 WL 494862 at *2 ("Adopting plaintiff's broad interpretation that any technology with the **potential** capacity to store or produce and call telephone numbers using a random number generator constitutes an ATDS would capture many of contemporary society's most common technological devices within the statutory definition."); *Dominguez*, 2014 WL 1096051 at *6 n.4 (same). In the very recent case of *De Los Santos v. Millward Brown, Inc.*, No. 13–80670–CV, 2014 WL 2938605, *6 (S.D. Fla., Jun. 30, 2014), the defendant challenged the TCPA as unconstitutional, claiming it is overbroad "because the statutory term 'automatic telephone dialing systems,' or autodialers, applies to most smart-phones and computers." The court disagreed, stating that "even sophisticated computer systems are not necessarily autodialers." *Id.* As the court observed: "Otherwise, the term autodialer would have no 'outer limit,' for 'virtually every telephone in existence, given a team of sophisticated engineers working doggedly to modify it, could possibly store or produce numbers using a random or sequential number generator'" (quoting *Hunt v. 21st Mortgage Corp.*, No. 2:12–CV–2697, 2014 WL 4260275, *5 (N.D. Ala., Feb. 4, 2014)).

Notably, the United States intervened in *De Los Santos* to defend the constitutionality of the TCPA. *See* "United States Mem. In Supp. Of The Constitutionality Of The TCPA," No. 13–80670–CV (S.D. Fla. Jan. 31, 2014) (ECF No. 54). In part, the United States urged that "[t]he overbreadth doctrine is not available where Defendant simply argues that section 227(b)(1)(A) could conceivably apply to calls made from smartphones and computers without providing any support for such an interpretation of the statute. *Id.* at 11. The government also noted that another district court had "recently stated that it is unlikely that a run-of-the-mill smartphone, in the absence of additional modifications to achieve the requisite capacity, would qualify as an ATDS." *Id.* (citing *Hunt v. 21st Mortgage Corp.*). In short, a cellphone or mobile device is not inherently an ATDS. Like any other device, it must have the present capacity to store or produce phone numbers to be called using a random or sequential number generator.

Plaintiffs' Amended Complaint includes no allegations whatsoever about Ms. Sorrells's mobile phone. Plaintiffs certainly do not allege, let alone support with facts, that Ms. Sorrells's phone has the capacities necessary to render that phone an ATDS under the statute. Therefore,

14

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

because it is beyond legitimate dispute that the text messages at issue came from her phone, Plaintiffs' TCPA allegations fail as a matter of law.  Specifically, Plaintiffs fail to plead the critical nexus, *i.e.*, that an ATDS was used to make a call.

Plaintiffs attempt to save their claims by relying on notions of agency and vicarious liability.  *See* AC ¶ 34 ("To the extent Defendant causes its offending Shopkick SMS Spam messages to be sent on its behalf by users, agents, vendors and/or contractors, Defendant is vicariously liable for those activities under a variety of doctrines including but not limited to *respondeat superior*.").  But those theories assume there has been a primary violation for which shopkick can be secondarily liable.  As discussed above, Plaintiffs have not adequately pled any primary violation.  They have not pled that shopkick used an ATDS to make any call.  Nor have they pled that Ms. Sorrells's cellphone, which did make the calls at issue, is an ATDS.  Unless Plaintiffs adequately plead a primary violation of the TCPA by Ms. Sorrells or someone else, shopkick cannot face any vicarious liability.

## C.  <u>Further Amendment Would Be Futile.</u>

Plaintiffs will undoubtedly seek leave to amend their TCPA allegations a second time.  "A district court may dismiss a complaint without leave to amend if amendment would be futile." *Airs Aromatics, LLC v. Opinion Victoria's Secret Stores Brand Management, Inc.*, 744 F.3d 595, 600 (9th Cir. 2014) (internal quotation omitted).  *Accord DeSoto v. Yellow Freight Systems, Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (leave to amend should be granted "unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency"); *Trindade v. Reach Media Group, LLC*, No. 12–CV–4759–PSG, 2013 WL 3977034, *4 (N.D.Cal., July 31, 2013) ("But a motion for leave to amend may be denied if it would be futile or legally insufficient.  A proposed amendment is futile if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense").

Importantly, "[a] party cannot amend pleadings to directly contradict an earlier assertion made in the same proceeding." *Airs Aromatics*, 744 F.3d at 600 (internal citations and quotations omitted).  Here, the deficiencies in Plaintiffs' TCPA claims cannot be cured.  Plaintiffs cannot

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   change or contradict the admitted fact that Arlyne Sorrells sent the text messages at issue.

2   Consequently, nothing that Plaintiffs could invent regarding shopkick's internal systems can

3   create the necessary statutory link between an ATDS and those text messages.

4   There are also significant reasons to doubt that this case will ever be appropriate for class

5   treatment.  As an initial matter, the only possible class would comprise friends or contacts of

6   Ms. Sorrells who received a text message from her regarding shopkick.  Plaintiffs have proposed

7   a class of every person in the nation who has ever received a text inviting them to try shopkick.

8   *See* AC ¶ 41.  But millions of shopkick users happily and intentionally send text invitations to

9   their friends, including many using the select "All" function as Ms. Sorrells did.  Moreover, many

10  of shopkick's millions of satisfied users were in fact introduced to the app through text invitations

11  from their friends.  There is no practical way to determine which other shopkick users (allegedly)

12  inadvertently sent text invitations to their friends, and for which of those friends the messages

13  were (allegedly) unexpected and unwanted.  Thus, at most, Plaintiffs can seek to act on behalf of

14  other friends and contacts of Ms. Sorrells.  And Ms. Sorrells already sent a broadcast request to

15  her Facebook community asking who would be willing to be involved in a lawsuit, and app-

16  arently only two friends (*i.e.*, Plaintiffs) responded.  Sorrells Dec., ¶ 19.  In short, there would

17  seem to be very little interest in this contrived class action Mr. Du Wors manufactured.

18  Moreover, there will be significant issues in this case regarding the extent to which each

19  of Ms. Sorrells's friends and contacts consented to receiving text message invitations and

20  recommendations from her.  *See Ryabyshchuck*, 2012 WL 5379143 at *3 ("These circumstances

21  unmistakably display some measure of prior consent, and dispel any allusion to "the proliferation

22  of intrusive, nuisance calls" targeted by the TCPA") (internal citations/quotations omitted); *see

23  also Aderhold v. Car2Go N.A., LLC*, No. C13–489RAJ, 2014 WL 794802, *3-8 (W.D. Wash.,

24  Feb. 27, 2014) (discussing in detail the various TCPA cases holding that provision of one's

25  cellular telephone number constitutes consent to be contacted at that number).  It is undoubtedly

26  true for at least some of Ms. Sorrells's friends and contacts that they have established a pattern of

27  sharing recommendations and invitations to try new products and services.  Indeed, Ms. Sorrells's

28  decision to send a message about shopkick to all 300 of her Facebook friends strongly suggests

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   that dynamic exists.  The individualized assessment of consent issues alone likely precludes class

2   treatment.  *See, e.g.*, *Meyer v. Portfolio Recovery Associates, LLC*, No. 11cv1008 AJB (RBB),

3   2011 WL 11712610, *3 (S.D. Cal., Sept. 14, 2011) (citing *Forman v. Data Transfer, Inc.*, 164

4   F.R.D. 400, 402 (E.D. Pa. 1995)).

5       In conjunction with this motion, shopkick has also filed a motion to disqualify Newman

6   Du Wors LLP from acting as class counsel, and Plaintiffs from acting as class representatives, in

7   this case.  Because they represent the interests of absent class members who cannot represent

8   themselves, class representatives and their lawyers are fiduciaries who must be free of conflicts or

9   other divided loyalties.  The class action process also carries the imprimatur of the Court, and

10  must therefore be truly independent and above reproach.  For those reasons, in the Ninth Circuit,

11  a class action may not be certified where there is the suggestion of impropriety by class counsel

12  or reason to doubt the lawyer's independence.  *Kayes v. Pacific Lumber Co.*, 51 F.3d 1449, 1466

13  (9th Cir. 1995) ("The responsibility of class counsel to absent class members whose control over

14  their attorneys is limited does not permit even the appearance of divided loyalties of counsel.").

15  Importantly, it is not necessary for the Court to find that impropriety actually occurred; the "taint"

16  caused by questionable or irregular facts is sufficient to preclude class certification.  *Id.* at 1465

17  ("The 'appearance' of divided loyalties refers to differing and potentially conflicting interests and

18  is not limited to instances manifesting such conflict.").

19      This case undeniably carries a "taint."  At a minimum, there are troubling questions about

20  the connections between the Du Wors law firm, Ms. Sorrells, and Plaintiffs.  More specifically,

21  the manner in which Mr. Du Wors and his paralegal, Ms. Sorrells, "shopped" for plaintiffs based

22  on liability theories predicated on Ms. Sorrells's own conduct is improper.  Plaintiffs and Mr. Du

23  Wors have compounded the issues by failing to disclose the true genesis of this case and then

24  omitting the key background facts from the Amended Complaint.  As such, neither Plaintiffs nor

25  their counsel are adequate class representatives under Fed. R. Civ. P. 23(a)(4).

26      Finally, in considering whether to allow Plaintiffs to make yet another attempt at pleading

27  viable claims, it is fair for the Court to ask whether this is the sort of case for which the TCPA

28  was designed and intended.  Plaintiffs were not harmed by the messages they received from their

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT

17

CASE NO. 4:14-CV-02464-MMC

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    friend, nor do they claim otherwise; the Amended Complaint does not even allege that Plaintiffs

2    were charged for the messages.  Plaintiffs did not go seeking a lawyer to defend their interests

3    and vindicate their rights.  Instead, at the urging of Mr. Du Wors, Plaintiffs were actively solicited

4    by their close friend, Ms. Sorrells, to act as representatives in a lawsuit devised by Mr. Du Wors

5    (her employer).  Apparently, none of Ms. Sorrells's other friends or contacts were sufficiently

6    outraged to care to participate.  For her part, Ms. Sorrells claims to have been "embarrassed" by

7    her own deliberate message "blast" to her friends, but she wants nothing to do with this lawsuit

8    and worked to conceal her involvement.  *See also* Dkt. No. 35 at 6 (the Court noting that Ms.

9    Sorrells claims no interest in this lawsuit).  The "prime mover" behind this suit is Mr. Du Wors,

10   who created the liability theory before he had a client, and then encouraged his paralegal to go

11   shopping for plaintiffs.  These are not exactly facts begging for federal court relief.[7]

12       More fundamentally, "courts broadly recognize that not every text message or call

13   constitutes an actionable offense; rather, the TCPA targets and seeks to prevent 'the proliferation

14   of intrusive, nuisance calls.'"  *Ryabyshchuck*, 2012 WL 5379143 at *3 (quoting *Mims v. Arrow

15   Financial Services, LLC*, --- U.S. ----, 132 S.Ct. 740, 745 (2012)).  "With the statute's purpose in

16   view, the Ninth Circuit recently emphasized that courts look to the surrounding circumstances in

17   determining whether particular calls 'run afoul of the TCPA,' and in so doing, courts must

18   'approach the problem with a measure of common sense.'"  *Id.* (quoting *Chesbro,* 705 F.3d at

19   918).  Shopkick is not aware of a single court decision where a user-initiated/user-transmitted text

20   message, like the ones at issue here, was found to violate the TCPA.  Nor has the FCC ever stated

21   that a "refer-a-friend" text message like the ones Ms. Sorrells sent from her cellphone violate the

22   TCPA.  If they did, every unsolicited text message to a friend encouraging her to try a new

23   restaurant or read a new book would violate federal law.  Common sense — coupled with the

24

25   [7]  Most people who inadvertently "reply all" do not attempt to convert their mistake into a federal
     case.  Nor do the vast majority of people who receive messages, even in error, from their friends
26   file a lawsuit.  In fact, shopkick was sued once before under the TCPA.  *See Ceja v. Shopkick,
     Inc.*, Case No. CV13-6295 (C.D. Cal. 2013).  When shopkick, again through its own invest-
27   igation, was able to establish that the text message in question had come from the plaintiff's
     cousin, the plaintiff voluntarily dismissed her suit without further proceedings.
28

1    realities of a modern mobile world where text messages have largely replaced email, and our

2    social networks are inherently based on shared likes and interests — dictates that Plaintiffs'

3    TCPA claims must fail.  Certainly, the Court should not stretch the prohibitions of the TCPA to

4    the snapping point just to ameliorate the consequences of Ms. Sorrells pushing the wrong button

5    on her cellphone.

6                                    V.   **CONCLUSION**

7         For the foregoing reasons, shopkick respectfully requests that the Court dismiss Plaintiffs'

8    Amended Complaint with prejudice.

9    Dated:  August 25, 2014              FENWICK & WEST LLP

10

11                                       */s/  Brian D. Buckley*
                                         RODGER R. COLE (CSB No. 178865)
12                                       rcole@fenwick.com
                                         SEAN S. WIKNER (CSB No. 268319)
13                                       swikner@fenwick.com
                                         FENWICK & WEST LLP
14                                       Silicon Valley Center
                                         801 California Street
15                                       Mountain View, CA  94041
                                         Telephone:  650.988.8500
16                                       Facsimile:  650.938.5200

17

18                                       BRIAN D. BUCKLEY
                                         (admitted *pro hac vice*)
19                                       bbuckley@fenwick.com
                                         FENWICK & WEST LLP
20                                       1191 Second Avenue, 10th Floor
                                         Seattle, WA 98101
21                                       Telephone: (206) 389-4510
                                         Facsimile: (206) 389-4511

22                                       Attorneys for Defendant|
                                         SHOPKICK, INC.
23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO