IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZAK HURICKS, et al., | No. C-14-2464 MMC |
| Plaintiffs, | **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| SHOPKICK, INC., | |
| Defendant. | |

Before the Court is defendant Shopkick, Inc.'s ("Shopkick") "Motion for Summary Judgment," filed May 1, 2015. Plaintiffs Zak Huricks and Trista Robinson have filed opposition, to which Shopkick has relied. Also, with leave of court, the parties have filed supplemental briefs. Having read and considered the papers filed in support of and in opposition to the motion, the Court rules as follows.[1]

**BACKGROUND**

In the operative complaint, the First Amended Complaint ("FAC"), plaintiffs allege that Shopkick "operates a shopping application for Apple and Android devices that urges consumers to purchase retail goods for sale close to the consumers' physical location" and that the "App" has "nearly 7 million users." (See FAC ¶ 18.) Plaintiffs also allege that

---

[1] By order filed August 11, 2015, the Court took the matter under submission.

Shopkick sent to their respective cellular telephones unconsented "[s]pam messages." (See FAC ¶¶ 35, 40.) Specifically, plaintiffs allege they each received an identical text message, purportedly sent by a friend, which text message, in addition to containing a "link to Shopkick's website," read as follows: "Hey, just gave you 50 bonus points on shopkick – a cool new app that rewards you for shopping. Check it out." (See FAC ¶¶ 23, 35-36, 38.)

Based thereon, plaintiffs assert three causes of action on their own behalf and on behalf of a putative nationwide class. In the First Cause of Action, plaintiffs allege Shopkick violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(1)(A)(iii). In the Second Cause of Action, plaintiffs allege Shopkick violated § 17200 of the California Business and Professions Code, which claim is derivative of the First Cause of Action. In the Third Cause of Action, titled "Injunctive Relief," plaintiffs seek an order enjoining "further violations" of the TCPA. (See FAC ¶ 61.)

## DISCUSSION

Shopkick argues it is entitled to summary judgment because plaintiffs cannot establish Shopkick violated § 227(b)(1)(A)(iii). Section 227(b)(1)(A)(iii) provides that it is unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system . . . to any telephone number assigned to a . . . cellular telephone service." See 47 U.S.C. § 227(b)(1)(A)(iii). "[A] text message is a 'call' within the meaning of [§ 227]." Satterfield v. Simon & Schuster, Inc., 569 F.3d 946, 952 (9th Cir. 2009). Shopkick contends plaintiffs cannot establish that Shopkick made the calls, i.e., sent the texts, plaintiffs received.

Shopkick's argument is based on a ruling issued July 10, 2015, by the Federal Communications Commission ("FCC"), titled Omnibus Declaratory Ruling and Order ("FCC Order").[2] In a section of the FCC Order titled "Maker of the Call," the FCC addressed, inter alia, a petition by TextMe, Inc. ("TextMe") (see FCC Order at 25, 36-37), in which TextMe requested a finding that, when users of the TextMe application ("app") use the app to

---

[2]The FCC Order is Exhibit A to Shopkick's "Second Supplemental Brief," filed July 10, 2015, and Exhibit 4 to the Declaration of John Du Wors, filed July 31, 2015.

2

cause "invitational texts" to be sent to third parties, "TextMe does not make calls pursuant to the TCPA" (see Buckley Decl., filed February 3, 2015, Ex. D at 13).  In its order, the FCC, after noting the term "make" is not defined in the TCPA, resolved TextMe's petition by applying a test it had adopted in a prior order to determine when a call is "initiate[d]." (See FCC Order ¶ 29.)[3]  Under that test, the FCC "look[s] to the totality of the facts and circumstances surrounding the placing of a particular call to determine: 1) who took the steps necessary to physically place the call; and 2) whether another person or entity was so involved in placing the call as to be deemed to have initiated it, considering the goals and purposes of the TCPA." (See FCC Order ¶ 30.)

In applying the test, the FCC first noted that the TextMe app "enables users to send invitational text messages to contacts in their phone's address book." (See FCC Order ¶ 36.)  The FCC then set forth the steps the users must take to cause the invitational texts to be sent, specifically "(1) tap a button that reads 'invite your friends'; (2) choose whether to invite all their friends or individually select contacts; and (3) choose to send the invitational text message by selecting another button." (See id. (internal quotation, alteration, and citation to TextMe's petition omitted).)  The FCC next stated that, upon the conclusion of the above-referenced process, "TextMe then sends the invitational text message, which includes the user's TextMe handle and invites the recipient to install the App so the user and the contact invited by the user can call and text for free." (See id.)[4]  Lastly, the FCC concluded that TextMe was not the "maker or initiator of the invitational text messages," reasoning as follows:

> [W]e first look to the extent to which TextMe controls the content of the invitational messages.  TextMe acknowledges that the language of the invitational texts has varied over time, but is clear that it, and not the app user, controls the content of the

---

[3]The term "initiate" is found in a section of the TCPA not at issue in either the instant case or the TextMe petition.  See 47 U.S.C. § 227(b)(1)(B) (providing it is unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior consent of the called party, unless the call is initiated for emergency purposes or is exempted by rule or order by the [FCC]").

[4]TextMe's app "allows users to send and receive text messages within the United States free of charge if both parties are app users." (See id.)

> invitational text messages. Ruling on the . . . factors we discussed [earlier in the order], to the extent that TextMe controls the content of the message and the content of the message is telemarketing or a commercial advertisement for the TextMe app, TextMe may be liable for the calls. We also consider the extent to which the app user decides whether to initiate the invitational message, which is instructive in determining whether TextMe is so involved in placing the invitational text messages as to be deemed to have made or initiated them, considering the goals and purposes of the TCPA. Here, TextMe outlines the steps the app user takes and the choices he or she makes in determining whether to send an invitational message, to whom to send an invitational message, and when that invitational message is sent. These affirmative choices by the app user lead us to conclude that the app user and not TextMe is the maker of the invitational text message. While we agree with commentators that TextMe's control of the content of the invitational text message is a reason for concern, and take into account the goals and purposes of the TCPA, we conclude that the app user's actions and choices effectively program the cloud-based dialer to such an extent that he or she is so involved in the making of the call as to be deemed the initiator of the call. . . . TextMe is not the maker or initiator of the invitational text messages because it is not programming its cloud-based dialer to dial any call, but merely has some role, however minor, in the causal chain that results in the making of a telephone call.

(See id. ¶ 37 (internal footnotes, quotation and alteration omitted).)

In sum, the FCC found that, even though a provider of an app controls the content of invitational text messages that are, in essence, advertisements for the app, the provider is not deemed to be the sender of those text messages where users of the app must make a series of "affirmative choices" in order to cause the messages to be sent. (See id. ¶¶ 36-37.)

Shopkick argues the Court should defer to the FCC's interpretation of the TCPA, and that its finding as to TextMe's invitational text messages is equally applicable to the instant case. As "Congress has delegated the FCC with the authority to make rules and regulations to implement the TCPA," courts defer to the FCC's interpretation of a term in the TCPA, so long as the term is "not defined by the TCPA" and the FCC's interpretation is "reasonable." See Satterfield, 569 F.3d at 953 (9th Cir. 2009). Here, as the FCC noted (see FCC Order ¶ 29), the TCPA does not define "make," and the Court finds the FCC's interpretation of "make" is not unreasonable. Indeed, plaintiffs do not argue to the contrary or otherwise suggest the Court should not defer to the FCC's interpretation of the TCPA as set forth above. The Court thus defers to the FCC's interpretation and next considers

1 whether Shopkick has shown that the FCC's ruling as to the TextMe invitational text messages is equally applicable to the Shopkick invitational text messages.

      Shopkick does not contend that, at the time the subject texts were received by plaintiffs, users of its app had the ability to alter the content of the invitational text message.[5] Consequently, as was the case with TextMe, Shopkick controls the content of the text message. Additionally, as was the case with TextMe, the text message is, at least in part if not wholly, an advertisement in that the text message invites the receiver to download Shopkick's app. (See FAC ¶ 36, Ex. B.) Under the FCC's reasoning set forth above, those two factors weigh in favor of finding Shopkick to be the sender of the texts. As further explained by the FCC, however, an app user nonetheless is considered the sender where the app user is required to make "affirmative choices" in determining whether to send invitational text messages, to whom to send such messages, and when to send the messages. (See FCC Order ¶ 37.)

      As to such affirmative choices, Shopkick offers evidence that, at the time plaintiffs received the subject texts, a user of its app "must [have] proceed[ed] through a multi-step invitation flow within the app" to cause text messages to be sent to contacts in the user's phone. (See Stanek Decl. ¶ 6.) First, the user must have affirmatively granted the Shopkick app "permission to access the user's contacts in the phone." (See id. ¶ 6, Ex. A.) Second, when the app provided the user with the option to "invit[e] friends," the user must have responded by selecting "Continue" rather than "No, thanks." (See id.) Third, once the user clicked "Continue," the user would have been shown a series of screens by which he or she was given the option of selecting the contacts to whom the invitations would be sent. (See id. ¶¶ 6-7, Ex. A.) Fourth, once the user selected contacts, the user would have been shown a screen listing the chosen contacts and the "format" in which the

//

---

[5] According to Shopkick, in the "current version of the app," the user is shown the "suggested content of a text message, which the user may then edit." (See Stanek Decl. ¶ 8.)

5

invitations were to be sent,[6] after which, to cause the invitations to be sent, the user would have then pressed a button stating "Invite Friends." (See Stanek Decl. ¶ 7, Ex. A.) Plaintiffs have not offered evidence to dispute Shopkick's showing as to the steps the user must have taken to cause the invitational text messages to be sent.

The Court finds the steps the user must have taken to cause the Shopkick invitational text messages to be sent are indistinguishable in all material respects from the steps a user of the TextMe app must take to cause the TextMe invitational texts to be sent, which steps, as set forth above, are tapping a button stating "invite your friends," choosing which contacts to invite, and choosing to send the text messages by tapping another button. (See FCC Order ¶ 36.) Although plaintiffs endeavor to show the FCC's decision as to the TextMe app nonetheless is inapplicable to the Shopkick app, the Court, as discussed below, is not persuaded.

First, plaintiffs argue, Shopkick's motion sets forth an "invite mechanism," i.e., the steps by which the texts are sent, that "does not describe the operative version, which was in place on or about May 1, 2014," the date plaintiffs received the texts at issue in the instant action. (See Pls.' Statement of Supp. Authority, filed July 31, 2015 ("Pls.' Supp. Brief."), at 3:16-20.) Shopkick, however, has offered evidence to establish the invite mechanism described by Shopkick is the mechanism that was in place on May 1, 2014, (see Stanek Decl. ¶ 6) and plaintiffs offer no evidence to the contrary.

Second, plaintiffs assert, the TextMe invitational texts are "personal and non-commercial," whereas the texts plaintiffs received are "generic and commercial," namely, "paid advertisements." (See Pls.' Supp. Brief at 6:6-7, 7:11-12, 20.) As to "personal" versus "generic," the Court sees little difference between the two invitational texts. The FCC Order describes the TextMe invitational texts, which were written by TextMe without input from any user, as including the user's "TextMe handle" and inviting the recipient "to

---

[6]As to the format, an "icon" was displayed adjacent to each contact shown on the screen. (See Neta Decl. Ex. B at 50:7-15.) For contacts with phone numbers, a "little person icon" was displayed, for contacts with e-mail addresses, an "e-mail icon" was displayed, and for Facebook contacts, an "F" was displayed. (See id.)

6

1  install the App" through a provided link, "so the user and the contact invited by the user
2  [can] call and text for free." (See FCC Order ¶ 36 (alteration in original).)  The Shopkick
3  invitational texts similarly include the name of the user and, after a brief description of the
4  app's benefits, specifically, "bonus points," go on to provide a link to the Shopkick website
5  accompanied by the phrase "Check it out." (See FAC Ex. B.)  As to "non-commercial"
6  versus "commercial," the Court finds there is no material difference between an offer of free
7  texts and an offer of free shopping points.

8        Third, plaintiffs argue that Shopkick, but not TextMe, "concealed the fact that invites
9  would be sent by text" (see Pls.' Supp. Brief at 9:3-4), rather than through Facebook (see
10 Sorrells Decl. ¶ 8), because, according to plaintiffs, "[t]here was no indication within the
11 operative version of the Shopkick app that users would be sending text messages to their
12 mobile device contacts," whereas the TextMe's "invite mechanism clearly gives users the
13 option 'Invite your friends by Text'" (see Pls.' Supp. Brief at 8:17-19).  Shopkick, however,
14 has offered evidence demonstrating that the app did indicate to users how invitations would
15 be sent to the selected contacts.  Specifically, Shopkick has shown that, on May 1, 2014,
16 the Shopkick app showed users, on the screen shown before the users were given the
17 option to cause the invitations to be sent, the number of invitations that would be sent and
18 whether by text or by another modality. (See Stanek Decl. ¶ 7, Ex. A at 5 (providing, as
19 example, screen informing user that "189 texts 1778 emails 959 facebook" invitations would
20 be sent if user pressed "Invite friends").)  Plaintiffs offer no evidence that such information
21 was not, in fact, shown to users operating the Shopkick app on May 1, 2014.

22       Fourth, plaintiffs observe that, in a portion of the FCC Order's discussing a company
23 other than TextMe, the FCC stated:  "[W]hether a person who offers a calling platform
24 service for the use of others has knowingly allowed its client(s) to use that [app] for unlawful
25 purposes may also be a factor in determining whether the platform provider is so involved
26 in making the calls as to be deemed to have initiated them." (See FCC Order
27 ¶ 30.)  Plaintiffs argue such factor is applicable to Shopkick even if the user is deemed the
28 sender of the invitational texts, because, plaintiffs assert, Shopkick indirectly sent

7

"unsolicited text spam" through such user. (See Pls.' Supp. Brief at 9:22-28.) Whatever unlawful purposes the FCC may have had in mind in making the above-quoted statement, however, it could not have included in that category the circumstances presented here, given its finding in favor of TextMe while at the same time acknowledging TextMe's similarly indirect "role . . . in the causal chain." (See FCC Order ¶ 27.)

Fifth, and lastly, citing a ruling issued by the FCC in 2013, plaintiffs argue Shopkick should be held vicariously liable under an agency theory. Plaintiffs' reliance on the FCC's 2013 ruling is unavailing, however, as the FCC sets forth therein the circumstances under which a "seller" can be held "vicariously liable" for violations of the TCPA when committed by "third-party telemarketers" (see Du Wors Decl. Ex. 12 (2013 ruling) at 1), and plaintiffs have made no showing that an agency relationship exists between Shopkick and any of its users, let alone that any such user is a telemarketer. See Gomez v. Campbell-Ewald Co., 768 F.3d 871, 873, 878-79 (9th Cir. 2014) (holding "a defendant may be held vicariously liable for TCPA violations where the plaintiff establishes an agency relationship, defined by federal common law, between the defendant and a third-party caller"; citing, in case where undisputed facts showed defendant "outsourced" dialing to "third-party vendor," FCC's 2013 ruling as "clarif[ying] that vicarious liability is imposed . . . for violations of [TCPA] that are committed by third-party telemarketers").

In sum, plaintiffs having failed to demonstrate a material difference between the circumstances presented here and those addressed in the FCC Order, the Court finds the FCC's determination therein is equally applicable to the instant claims, and, accordingly, finds Shopkick has not violated the TCPA.

**CONCLUSION**

For the reasons stated above, Shopkick's motion for summary judgment is hereby GRANTED.

**IT IS SO ORDERED.**

Dated: August 24, 2015

MAXINE M. CHESNEY
United States District Judge